## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEREMY SMITH,          :
      Plaintiff,          :          Civil Action No. 3:14-CV-761
               :
    v.          :          (Judge Mariani)
               :
THOMAS, *et al.*,          :
      Defendants.          :

**FILED
SCRANTON**

MAY 1 6 2014

PER _____
~~DEPUTY CLERK~~

JEREMY SMITH,          :
      Plaintiff,          :          Civil Action No. 3:14-CV-762
               :
    v.          :          (Judge Mariani)
               :
THOMAS, *et al.*,          :
      Defendants.          :

## MEMORANDUM

On April 21, 2014, Plaintiff, Jeremy Smith, an inmate currently confined at the United

States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg") filed two *pro se*

complaints pursuant to 28 U.S.C. § 1331. (Civil Action Nos. 3:14-cv-761 and 3:14-cv-762,

Docs. 1). He filed motions for leave to proceed *in forma pauperis* and prisoner

authorizations in both matters. (*Id.* at Docs. 3, 4). Plaintiff alleges constitutional violations

for events that occurred at USP-Lewisburg. The complaints "request an order declaring that

the defendants have acted in violation of the United States Constitution," they seek

compensatory damages, and include an injunction claim "compelling defendants to provide

or stop medical care" and "to provide or stop cruel and unusual punishments" at USP-Lewisburg. (Civil Action Nos. 3:14-cv-761 and 3:14-cv-762, Docs. 1).

Pursuant to the screening requirements of the Prison Litigation Reform Act ("PLRA"), this Court reviewed the complaints. *See* Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996); 28 U.S.C. § 1915A(a) After review, the above-captioned cases will be consolidated and Plaintiff will be directed to file one amended complaint.

## Standard of Review - Screening

The PLRA authorizes a district court to dismiss an action brought by a prisoner under 28 U.S.C. § 1915 if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or one that seeks monetary relief from a defendant who is immune. *See* 28 U.S.C. § 1915(e); *Kennedy v. S.C.I. Rockview Emples.*, 2010 U.S. Dist. LEXIS 123545, *4 (M.D. Pa. 2010) (Caputo, J.). Moreover, § 1915A requires the court to screen any complaint brought by a prisoner who seeks relief from a government employee to determine whether, *inter alia*, the complaint fails to present a viable cause of action. This initial screening is to be done as soon as practicable and need not await service of process. 28 U.S.C. § 1915A(a).

The grounds for dismissal under § 1915A are similar to the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." 28 U.S.C. §

2

1915A; FED. R. CIV. P. 12(b)(6)).  The court must accept as true all allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff; however, the court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994).  The factual allegations must be enough to raise a right to relief above the speculative level and, a court need not assume that a plaintiff can prove facts not alleged.  *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a court need not "accept legal conclusions set forth as factual allegations"); *Tindell v. Beard*, 351 Fed. Appx. 591, 593-94 (3d Cir. 2009). Additionally, a civil rights complaint must comply with Federal Rule of Civil Procedure 8(a). FED. R. CIV. P. 8(a) (requiring a "short and plain" statement of a cause of action).  This Court also recognizes that *pro se* complaints are to be liberally construed.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Riley v. Jeffes*, 777 F.2d 143, 147-48 (3d Cir. 1985).

## Discussion

### A.    Consolidation

Civil Action Number 14-761 names thirty (30) Defendants, as follows: Warden

3

Thomas, Doctor A. Edinger, Physician Assistant Francis Fasciana, Physician Assistant Noel Trusal, John Doe Physician Assistant on "Z" Block, EMPT Potter, EMPT B. Walls, EMPT John Doe, R.N. Robinson, R.N. S. Deer, R.N. John Doe, Lieutenant Johnson, Lieutenant C. Johnson, Lieutenant Cardonas, Lieutenant C. Scampone, Lieutenant B. Shirk, Lieutenant Brand, Lieutenant N. Carpet, Lieutenant J. Sherman, Lieutenant Scott, four (4) Lieutenants John Doe, Officer S. Eck, Officer J. Klose, Officer T. Stackhouse, Officer Fisher, Correctional Officer John Doe, and the Federal Bureau of Prisons. (Civil Action No. 3:14-cv-761, Doc. 1). The caption of this complaint only names Warden Thomas, Dr. Edinger, and the Federal Bureau of Prisons, individually and in their official capacities. (*Id.*). Paragraph three (3) of the complaint names twenty-seven (27) additional Defendants, as listed above. (*Id.* at ¶ 3).

Civil Action Number 14-762 names thirty-two (32) Defendants. (Civil Action No. 3:14-cv-762, Doc. 1). The Defendants named are as follows: Warden J.E. Thomas, Dr. A. Edinger, Physician Assistant Francis Fasciana, Physician Assistant Noel Trusal, John Doe Physician Assistant on "Z" Block, EMPT Potter, EMPT B. Walls, EMPT John Doe, R.N. Robinson, R.N. S. Deer, R.N. John Doe, Lieutenant Johnson, Lieutenant C. Johnson, Lieutenant Cardonas, Lieutenant C. Scampone, Lieutenant B. Shirk, Lieutenant Sailor, Lieutenant Brand, Lieutenant N. Carpet, Lieutenant J. Sherman, Lieutenant Scott, four (4) Lieutenants John Doe, Officer S. Eck, Officer J. Klose, Officer T. Stackhouse, Officer

4

Fisher, Correctional Officer John Doe, Officer D. Nogle and the Federal Bureau of Prisons.

(*Id.*). The caption of the complaint in Civil Action Number 14-762 only names Warden

Thomas, Lieutenant Johnson, Dr. Edinger, and the Federal Bureau of Prisons, individually

and in their official capacities. (Civil Action No. 3:14-cv-762, Doc. 1). Paragraph three (3)

of the complaint renames Warden Thomas, Lieutenant Johnson and Dr. Edinger, as well as

the twenty-eight (28) additional Defendants listed above. (*Id.* at ¶ 3). Paragraph eleven

(11) of the complaint names one additional Defendant, Officer D. Nogle. (*Id.* at ¶ 11).

Plaintiff's complaints involve common questions of law and fact and, therefore,

should be consolidated pursuant to Rule 42 of the Federal Rules of Civil Procedure, which

provides:

> If actions before the court involve a common question of law or fact, the court
> may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

FED. R. CIV. P. 42(a). In determining whether to consolidate, the court must balance the

savings of time and effort gained through consolidation against the prejudice,

inconvenience, or expense that it might cause. *See Bernardi v. City of Scranton*, 101

F.R.D. 411, 413 (M.D. Pa. 1983).

Review of the complaints filed in actions 3:14-cv-761 and 3:14-cv-762, reveals that

they involve common questions of law and raise almost the exact same constitutional

5

claims against Defendants.  The claims raised in Action Number 14-761 are based on the

First and Eighth Amendments to the Constitution.  Plaintiff sets forth allegations of

retaliation, cruel and unusual punishment, and deliberate indifference.  (Civil Action No.

3:14-cv-761, Doc. 1, ¶¶ 5, 6, 8, 10-12).  The claims raised in 3:14-cv-762 also concern the

First and Eighth Amendments to the Constitution, setting forth claims of retaliation and cruel

and unusual punishment.  (Civil Action No. 3:14-cv-762, Doc. 1, ¶¶ 8, 10, 15).

        The factual basis for each action is nearly identical and is based on events that

occurred in March, 2014.[1]  Plaintiff alleges that he was placed in ambulatory restraints for

eight (8) days, from March 10, 2014, until March 18, 2014, in retaliation for refusing to

accept a new cellmate.  (Civil Action No. 3:14-cv-761, Doc. 1, ¶¶ 4, 6; Civil Action No. 3:14-

cv-762, Doc. 1 ¶¶ 4, 9).  As a result of the "skin tight, bone tight" ambulatory restraints,

Plaintiff alleges that he suffers from permanent nerve damage in his right hand, minimal

senses in his right hand, and permanent welts on his wrist.  (Civil Action No. 3:14-cv-761,

Doc. 1, ¶ 6; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 9).

        On March 10, 2014, Officers S. Eck and J. Klose allegedly told Plaintiff to "cuff up"

_____

        [1]    The complaint in Civil Action Number 14-761 states that excessive force was used against
Plaintiff on July 30, 2012, when he was assigned a dangerous cellmate and was placed in ambulatory
restraints for forty-three (43) hours, resulting in permanent nerve damage, skin welts, and chain marks.
(Civil Action No. 3:14-cv-761, Doc. 1, ¶ 5).  A review of this District's docket reveals that Plaintiff has
already litigated this claim, which was ultimately dismissed on July 11, 2013 for failure to exhaust. *See
Smith v. Shirk, et al.*, No. 3:12-cv-2529 (M.D. Pa. 2012) (Mariani, J.).  Plaintiff is not presently setting forth
these allegations; rather, he appears to be informing the Court of a similar event that occurred when he
was previously placed in ambulatory restraints.

for a routine cell search. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 5; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 4). Plaintiff was placed in the shower and he observed Officer T. Stackhouse escort another inmate to Plaintiff's cell. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 5; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 4). Plaintiff alleges that he cannot be housed with a cellmate due to his bipolar and borderline personality disorders, and the correctional officers were aware of these disorders. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 5; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 5). Lieutenant Johnson asked Plaintiff if he was ready to go back to his cell with his new cellmate, and Plaintiff replied that he does not accept cellmates due to his mental disorders. (Civil Action No. 3:14-cv-762, Doc. 1 ¶ 5). Plaintiff alleges that the Lieutenant[2] and Officer S. Eck attempted to force Plaintiff out of the shower, but he refused. (Id. at ¶ 6). Plaintiff was then placed in ambulatory restraints for refusing to accept his new cellmate assignment. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 6; Civil Action No. 3:14-cv-762, Doc. 1 ¶¶ 7, 8). Plaintiff alleges that the Lieutenant[3] issued a false threat against him, stating that Plaintiff threatened to kill Officer S. Eck, to warrant placing him in ambulatory restraints. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 4; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 7). Once in the ambulatory restraints, Plaintiff was escorted back to his cell with a camera

---

[2]   Plaintiff does not name a specific lieutenant and it is unclear what lieutenant Plaintiff is referring to.

[3]   Plaintiff again does not name a specific lieutenant and it is unclear what lieutenant Plaintiff is referring to.

documenting the move. (Civil Action No. 3:14-cv-762, Doc. 1 ¶ 8). Officer S. Eck attempted to speak to Plaintiff in his cell, but Plaintiff did not respond. (*Id.*). Officers S. Eck and T. Stackhouse issued misconducts against Plaintiff for threatening another with bodily harm. (*Id.*). Plaintiff further alleges that additional false misconducts were issued against him by "the United States Penitentiary Lewisburg respondent superiors [sic]." (*Id.*).

On March 14, 2014, Lieutenants Cardonas, Brand, and C. Johnson, and Officer Fisher entered Plaintiff's cell to remove the ambulatory restraints. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 7; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 10). Plaintiff's leg shackles were removed and he was told that he was going into the cell with a new cellmate. (*Id.*). Plaintiff again refused and Officer Fisher allegedly grabbed Plaintiff by the throat and choked him, causing him to collapse. (*Id.*). Plaintiff alleges that Fisher later reported to the Federal Bureau of Investigation that Plaintiff assaulted him and kicked him in the hand, to justify putting him in "four man restraints." (*Id.*).

On March 16, 2014, Lieutenant B. Shirk asked Plaintiff if he was willing to accept a cellmate, and Plaintiff replied "no." (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 7; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 11). Lieutenant Shirk, Officer D. Nogle, and Officer John Doe then placed Plaintiff in ambulatory restraints. (*Id.*). On March 18, 2014, Lieutenant Shirk, Lieutenant John Doe, EMPT Potter, and Correctional Officers John Doe entered Plaintiff's cell, removed the restraints, and informed him that he was being moved to a single cell on

"Z" block. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 9; Civil Action No. 3:14-cv-762, Doc. 1 ¶¶ 12, 13). Plaintiff refused to leave his cell without a camera documenting the move. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 9; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 14). When the camera team arrived, Plaintiff was escorted to the shower. (*Id.*). Dr. Edinger, EMPT Potter, and other unknown officers were also present during this move. (*Id.*). Potter helped remove the restraints and he had to apply ointment to remove the left arm restraint. (*Id.*). The restraints were removed, Plaintiff was forced to shower, he was placed in clean paper clothes, handcuffed, and moved to the "Z" block cell. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 9; Civil Action No. 3:14-cv-762, Doc. 1 ¶¶ 14, 15).

The complaint in Action Number 14-761 then alleges that, on March 20, 2014, Plaintiff submitted a medical request to be treated by Dr. Edinger for the injuries he suffered, to which he received no response. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 10). Plaintiff submitted another sick call request on March 24, 2014, and again received no response. (*Id.* at ¶ 11).

The factual allegations in the two complaints are strikingly similar and they involve common questions of law. Additionally, as stated, there are thirty (30) common Defendants in the two actions. Consolidation of these two actions will promote judicial economy. Therefore, the cases will be consolidated into Civil Action No. 14-761 and the matter will proceed under that action number. *See Bradley v. Family Dollar, Inc.*, 2010 U.S. Dist.

LEXIS 139254 (M.D. Pa. 2010) (Blewitt, M.J.), *adopted by*, 2011 U.S. Dist. LEXIS 1897

(M.D. Pa. 2011) (Conner, J.).

## B.     Personal Involvement

"In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has

deprived him of a federal right, and that the person who caused the deprivation acted under

color of federal law." *Azzara v. Scism*, 2012 U.S. Dist. LEXIS 27459, *6 (M.D. Pa. 2012)

(Nealon, J.), *citing West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F. Supp.

1185, 1200 n.16 (M.D. Pa. 1992) (Conaboy, J.). "A defendant in a civil rights action must

have personal involvement in the alleged wrongs; liability cannot be predicated solely on the

operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)); *Mitchell v. Beard*, 492 Fed.

Appx. 230, 235 (3d Cir. 2012) (finding that the prisoner's allegations against four of the

DOC defendants "that they are liable for improperly supervising those directly responsible

for his injuries" were insufficient to state a claim). "Personal involvement can be shown

through allegations of personal direction or of actual knowledge and acquiescence.

Allegations of participation or actual knowledge and acquiescence, however, must be made

with appropriate particularity." *Rode*, 845 F.2d at 1207-08; *see also Houston v. Southers*,

2012 U.S. Dist. LEXIS 85318, *9-10 (M.D. Pa. 2012) (Jones, J.).

Upon review, the complaints fail to allege any personal involvement by Defendants

Fasciana, Trusal, Physician Assistant John Doe, Walls, EMPT John Doe, Robinson, Deer, R.N. John Doe, Scampone, Sailor, N. Carpet, Sherman, Scott, and three (3) Lieutenants John Doe. Notably, the body of the complaints do not mention their names, other than to name them as parties to the actions.

The only reference to John Doe Correctional Officers is that "numerous John Doe Correctional Officers" entered Plaintiff's cell on March 18, 2014 to remove his restraints and move him to another cell, and that "another officer John Doe" helped place him in ambulatory restraints on March 16, 2014. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 9). Such general allegations are insufficient to state a claim.

The only reference to one (1) Lieutenant John Doe is that, on March 18, 2014, he entered Plaintiff's cell with other prison officials to remove his restraints. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 9; Civil Action No. 3:14-cv-762, Doc. 1 ¶¶ 12, 13).

Accordingly, these Defendants are subject to dismissal. However, Plaintiff will be afforded an opportunity to file an amended complaint in which he may set forth, with particularity, any allegations of personal involvement by these Defendants.

## C.    Cruel and Unusual Punishment

Plaintiff alleges that Lieutenant Johnson, under the authority of Warden Thomas, initially placed him in ambulatory restraints on March 10, 2014, for allegedly threatening to kill Officer S. Eck. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 4; Civil Action No. 3:14-cv-762,

Doc. 1 ¶ 7). Liberally construed, Plaintiff appears to allege that Warden Thomas authorized the use of restraints.

Plaintiff alleges that he was placed in tight restraints for a total of eight (8) days, causing permanent nerve damage, loss of senses in his hand, and permanent welts, resulting in cruel and unusual punishment. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 6; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 9). The restraints were removed on March 14, 2014, but he was again placed in "four man restraints" for allegedly kicking Officer Fisher when he attempted to force Plaintiff out of his cell. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 7; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 10). Officer Fisher then allegedly grabbed Plaintiff by the throat and choked him, causing him to collapse. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 7; Civil Action No. 3:14-cv-762, Doc. 1, ¶ 10).

Plaintiff then alleges that he was placed in restraints on March 16, 2014, by Lieutenant B. Shirk, Officer D. Nogle and Officer John Doe. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 7; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 11). The restraints were removed on March 18, 2014. (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 9; Civil Action No. 3:14-cv-762, Doc. 1 ¶ 12). Accordingly, Plaintiff's claims may be analyzed under the categories of conditions of confinement and excessive use of force. *See Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 248 (M.D. Pa. 2009) (Rambo, J.) (recognizing that parties may dispute whether claims regarding the use of mechanical restraints fall into the category of conditions

of confinement or excessive force).

Conditions of confinement constitute cruel and unusual punishment where the conditions result in a serious deprivation of "the minimal civilized measure of life's necessities" under contemporary standards of decency. *Richardson v. Kane*, 2013 U.S. Dist. LEXIS 51122, *39 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To prevail on a conditions of confinement claim, a plaintiff must show: (1) that the prison conditions pose a substantial risk of harm; and (2) that the prison official was deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Tillman v. Lebanon Cty. Correctional Facility*, 221 F.3d 410, 418 (3d Cir. 2000); *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997).

"The use of excessive force against prisoners may constitute cruel and unusual punishment in violation of the Eighth Amendment." *Moultrie v. Luzerne County Prison*, 2008 U.S. Dist. LEXIS 87008, *13 (M.D. Pa. 2008) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). "The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency." *Tompkins v. County of Lackawanna*, 2013 U.S. Dist. LEXIS 20823, *10-13 (M.D. Pa. 2013) (citing *Hudson*, 503 U.S. at 8). When prison officials are accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (discussing *Whitley v. Albers*, 475 U.S. 312 (1986)).  In an excessive force case, a prisoner need not show significant injury; however, *de minimis* uses of physical force are insufficient to establish an Eighth Amendment violation.  *See Hudson*, 503 U.S. at 9-10.

Plaintiff's allegations sufficiently state Eighth Amendment claims against Lieutenant Johnson, Lieutenant B. Shirk, Nogle, Warden Thomas, and Officer Fisher so as to survive the screening process.  However, Plaintiff will be allowed to file an amended complaint to assert additional facts and he is advised that the amended complaint must be a new pleading which stands by itself without reference to the original complaints.  *See Young*, 809 F. Supp. at 1198.

**D.    Retaliation**

A cause of action for retaliation under the First Amendment requires a plaintiff to prove that: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Plaintiff alleges that he was retaliated against for refusing to accept a cell assignment.  (Civil Action No. 3:14-cv-761, Doc. 1, ¶ 6; Civil Action No. 3:14-cv-762, Doc. 1

14

¶ 9). Importantly, an "inmate does not have a right to be placed in the cell of his choice." *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995) (concluding that the inmate "had no constitutional right to remain in Unit 3-C instead of Unit 2-R"), *citing Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). *See also Alexander v. Fitch*, 396 Fed. Appx. 864 (3d Cir. 2010) (noting that the District Court reasoned that the prison's failure to allow Alexander to choose his own cellmates was not an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights). Further, "inmates do not have a liberty interest in being single celled." *Rivera v. Rendell*, 2013 U.S. Dist. LEXIS 46456, *35 (M.D. Pa. 2013) (Caputo, J.). Therefore, Plaintiff's allegation of retaliation for refusing to accept a cellmate does not state a constitutional claim and may be subject to dismissal.

### E.     Deliberate Indifference - Medical Care

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A "serious medical need" is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.

15

1987).  Additionally, if the delay or denial of adequate medical care results in the unnecessary and wanton infliction of pain or causes an inmate to suffer a life-long handicap or permanent loss, the medical need is "serious." *Id.*

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Kennedy*, 2010 U.S. Dist. LEXIS 123545, at *9-11, 18-19.  Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197; *see also Peterson v. Knauer*, 2008 U.S. Dist. LEXIS 14057, *10 (E.D. Pa. 2008) (explaining that the "the refusal to administer pain medication contrary to a surgeon's orders" may constitute deliberate indifference).

The complaint in Action Number 14-761 alleges that Plaintiff submitted two (2) sick call requests but he received no response, thus amounting to deliberate indifference to his serious medical needs.  (Civil Action No. 3:14-cv-761, Doc. 1, ¶¶ 10, 11).  On March 20, 2014, Plaintiff allegedly requested to be treated by Dr. Edinger, but he received no

16

response. (*Id.*). On March 24, 2014, he allegedly informed the two (2) block Physician Assistants that he needed pain medication and had submitted sick call requests, but he again received no response. (Civil Action No. 3:14-cv-761, Doc. 1, ¶¶ 10, 11). Plaintiff does not name the Physician Assistants, and he does not name who allegedly refused to respond to his sick call requests. There is insufficient evidence of the personal involvement of any Defendants regarding deliberate indifference to Plaintiff's serious medical needs. Plaintiff will be given leave to amend to cure these defects. In the amended complaint, Plaintiff must plead with more specificity his allegations regarding the denial of his sick call requests. *See Rouse*, 182 F.3d at 197 (holding that a court may only find deliberate indifference where the prison official delays medical treatment based on a non-medical reason or prevents a prisoner from receiving recommended medical care).

### F.    Sovereign Immunity

To the extent that Plaintiff seeks to impose liability against Defendants in their official capacities, this claim may be subject to dismissal. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) (holding, a "prisoner may not bring a *Bivens* claim against the ... BOP"); *Lewal v. Ali*, 289 Fed. Appx. 515, 516 (3d Cir. 2008) (concluding that the *Bivens* claims against the prison official defendants in their official capacities were properly dismissed). In his prayer for relief, Plaintiff has requested damages and injunctive relief. The doctrine of sovereign immunity bars a plaintiff's request for damages from state or federal officials

17

acting in their official capacities. *See Perry v. Pa. Dep't of Corr.*, 441 Fed. Appx. 833, 836

n.1 (3d Cir. 2011), *citing Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)

(holding that state officials acting in their official capacities cannot be sued under 42 U.S.C.

§ 1983 because they are not "persons", except when sued for injunctive relief). "But claims

requesting prospective injunctive relief from official-capacity defendants do not run afoul of

sovereign immunity." *Perry*, 441 Fed. Appx. at 836 n.1. Thus, any official capacity claims

for monetary relief against Defendants may be dismissed because they enjoy sovereign

immunity. *See FDIC v. Meyer*, 510 U.S. 471, 484-87 (1994) (finding that a *Bivens* claims

for damages against a federal agency is barred by the United States' sovereign immunity,

absent waiver); *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Perry*, 441 Fed. Appx.

at 836 n.1.

### G.    Exhaustion

The PLRA provides:

> No action shall be brought with respect to prison conditions under ... Federal
> law, by a prisoner confined in any jail, prison, or other correctional facility until
> such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (holding that "42

U.S.C. § 1997e(a), enacted as part of the PLRA, provides that a prisoner may not bring a

[civil rights] suit with respect to prison conditions 'until such administrative remedies as are

available are exhausted'"). The "exhaustion requirement applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Spruill*, 372 F.3d at 227. "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). The PLRA mandates that inmates properly exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rivera v. Pa. Dep't of Corr.*, 388 Fed. Appx. 107, 108 (3d Cir. 2010) ("An inmate must exhaust his administrative remedies *prior* to filing a civil action in federal court.") (emphasis added); 28 C.F.R. § 542.10, *et seq.* (Bureau of Prisons Administrative Remedy Program). A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. *See Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense that must be pled and proven by the defendants. *Id.*

Plaintiff's complaints do not indicate that he completed the grievance procedure and he has not attached any grievances to his complaints. Because failure to exhaust is an affirmative defense, *sua sponte* dismissal for failure to exhaust is not appropriate at this time. *See Ray*, 285 F.3d at 295. However, this Court notes that Plaintiff filed his complaints on April 21, 2014, alleging constitutional violations for events that occurred one month prior, in March, 2014. Plaintiff is therefore cautioned against reasserting his claims against

Defendants in an amended complaint if they have not been fully exhausted.

### H.    Amended Complaint

As explained, Plaintiff will be afforded an opportunity to file an amended complaint addressing the deficiencies discussed herein.  Plaintiff is advised that the "amended complaint must be complete in all respects."  *Young*, 809 F. Supp. at 1198.  It must be a new pleading which stands by itself without reference to the original complaints.  *Id.*  The amended complaint "may not contain conclusory allegations[; r]ather, it must establish the existence of specific actions by the defendants which have resulted in constitutional deprivations."  *Id.* (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)).  "The amended complaint must also be 'simple, concise, and direct' as required by the Federal Rules of Civil Procedure."  *Id.* (citing FED. R. CIV. P. 8(e)(1)).  "The allegations should be specific as to time and place, and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each individual did that led to deprivation of his rights."  *Williams v. Pa. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 88367, *18 (M.D. Pa. 2013) (Caputo, J.) (citing *Iqbal*, 556 U.S. at 676).  Plaintiff is also directed to name each Defendant in the caption of his complaint, as well as in the body of his complaint.  *See Sebrell ex rel. Sebrell v. Philadelphia Police Dept.*, 159 Fed. Appx. 371 (3d Cir. 2005) (affirming the District Court's dismissal of plaintiff's complaint for failure to prosecute for, *inter alia*, refusing to cooperate with the Court's Order to amend the caption of the complaint

to properly list the defendants).

## Conclusion

Plaintiff's two actions will be consolidated pursuant to Rule 42 of the Federal Rules of Civil Procedure as they involve common questions of law and fact. Accordingly, the actions will be consolidated into Civil Action No. 14-761, and Civil Action No. 14-762 will be closed.

Plaintiff will be directed to file an amended complaint curing the deficiencies outlined in this Memorandum. The complaints fail to adequately allege the personal involvement of Defendants Fasciana, Trusal, Physician Assistant John Doe, Walls, EMPT John Doe, Robinson, Deer, R.N. John Doe, Scampone, Sailor, N. Carpet, Sherman, Scott, four (4) Lieutenants John Doe, and John Doe Correctional Officers in any constitutional violations. Plaintiff's failure to comply may result in the dismissal of these Defendants.

Plaintiff is also cautioned that his allegation of retaliation for refusing to accept a cellmate may be subject to dismissal.

Plaintiff has failed to adequately allege the personal involvement of any Defendants regarding deliberate indifference to his serious medical needs. He is directed to allege with specificity those Defendants that were deliberately indifference to his serious medical needs.

Additionally, claims against the Federal BOP and Defendants in their official

capacities may be subject to dismissal.

Lastly, Plaintiff is cautioned against reasserting his claims against Defendants if they have not been fully exhausted.

A separate Order will be issued.

Date: 5/15/14

Robert D. Mariani
United States District Judge